BENJAMIN H. FARNSWORTH *vs.* ANDREW S. MACREADIE, et als.

Cumberland.   Opinion December 26, 1916.

*Admissibility of declaration of a former owner of land as against present*
*owner.   How far such declarations are admissible.   Admissibility*
*of deeds of former owner of land showing the extent and*
*location of side lines of certain streets or avenues.*
*Deeds and plans recorded as showing dedica-*
*tion as notice to subsequent purchasers.*

1.  The declarations of a former owner of real estate against interest, are not admissible to deny or disparage title.   But they are admissible when they relate to the nature, character or extent of the declarant's possession, or to the identity of monuments, or to the location of boundaries called for in a deed.
2.  The testimony of the parties to a deed as to the limits to which it was intended to extend is not admissible.
3.  The conveyance to a town of a strip of land delineated on a recorded plan as a street, "as and for a public street," and the acceptance by the town of the dedication make the strip a public town way, over which the town and its representatives have the same authority as over other public ways.
4.  The record of a deed of dedication of land "as and for a public street" as delineated upon a recorded plan is constructive notice to a subsequent purchaser of the extent of the dedication; and the limits of the dedication must be determined from the plan itself.
5.  In this case, it is held that the plan referred to in the deed of dedication of land for a street, shows that the land in dispute was included within the street, and that the recorded deed and plan were constructive notice thereof to the plaintiff, a subsequent purchaser.

Action of trespass quare clausum.   Defendant filed plea of general issue.   At conclusion of testimony, case was reported to the Law Court upon so much of the evidence as legally admissible, the Law Court to render such judgment as the rights of the parties require. Judgment for defendants.

Case stated in opinion.

*Fred V. Matthews,* for plaintiff.

*W. R. & E. S. Anthoine,* for defendants.

SITTING:  SAVAGE, C. J., KING, BIRD, HALEY, PHILBROOK, MADI-GAN, JJ.

SAVAGE, C. J.  Trespass quare clausum.  The defendants were, at the time of the alleged trespass, the selectmen of the town of Cape Elizabeth.  The trespass complained of consisted in removing a fence which the plaintiff had erected in Ottawa Park in Cape Elizabeth.  The defendants seek to justify on the ground that the fence was an obstruction in Sea View avenue, a public way.  The plaintiff contends that the land where the fence was, was not within the avenue, but was his private property.  This statement presents the issue.  The case comes before this court on report.

The title of the plaintiff is not directly involved, because as we understand the record it is admitted that the plaintiff had such possession of the locus as would entitle him to maintain an action of trespass against one who should invade his possession without right. Nevertheless a brief statement of the situation of the parties as to title will throw some light upon the merits of the controversy.

The record is not clear as to the origin of title.  But we assume, as counsel have done in argument, that the territory known as Ottawa Park was once owned by the Ottawa Park Company, and that afterwards the title to some part of it, at least, including the locus in quo, came to one Dalton.  The plaintiff claims under Dalton. First, through deeds from Dalton and the Park Company to one Stanley, in 1906, and a deed from Stanley to himself, dated January 5, 1914; secondly, through a deed from Dalton, in which the Ottawa Park Company joined as grantor, dated June 5, 1914.

It appears that in 1899, the Ottawa Park Company, then owner, caused the Ottawa Park Tract to be platted into lots, streets, avenues, and so forth, and a plan thereof to be recorded in the proper registry of deeds.  One of the avenues delineated on the plan was Sea View avenue.  The following sketch shows approximately so much of the plan as is material to this case.  In the sketch we have indicated the corners of the tract now in dispute by the letters a b c d.  The fence in question was erected between points a and b.

The question is, did Sea View avenue as delineated on the plan include the tract a b c d? That it was so intended by the Park Company is reasonably clear. In 1900, the company conveyed lot 7, and with it practically all of the tract marked "Public Grounds." The northerly line of the "Public Grounds" thus sold we have indicated by a dotted line on the sketch. The description in this deed, and also that in a subsequent deed from the same grantor to another purchaser, the land having apparently been reconveyed in the meantime, tend to show that the company regarded Sea View avenue as extending seaward as far as the bluff line. The deeds were offered by the defendants as declarations of a former owner, against interest, and so admissible against those claiming under it. The plaintiff contends that they are inadmissible for that purpose. The application of the rule contended for by the defendants is limited. Such declarations are not admissible to deny or disparage title in the broad sense. They are admissible when they relate to the nature, character or extent of the declarant's possession, or to the identity of monuments of the location of boundaries called for in a deed. *Phillips* v. *Laughlin,* 99 Maine, 26. And in *Hyde* v. *County of Middlesex,* 2 Gray, 267, it was held that they are admissible as evidence of a dedication of land to a public use. It is indispensable, however, to the admissibility of declarations of a former owner against his successor in title, that they should relate to the premises in question. *Fall* v. *Fall,* 100 Maine, 98.

It is true in this case that the declarations related to the boundaries of lot 7 as enlarged by the "Public Grounds." That tract was bounded in the deed on the northeast, east and southeast by Sea View avenue as far as to the bluff line. But the boundary of lot 7 thus described, was also the boundary of Sea View avenue, which the declarant then owned, subject to an incipient dedication, and from whom the plaintiff claims title. The declaration in the deeds was in effect that the southerly side line of Sea View avenue was extended by various courses to the bluff line, at about the point d in the sketch. And this related to the land now in question. We think the deeds were admissible as evidence for the limited purpose of showing the extent and location of the side line of Sea View avenue.

As to the plaintiff's title, only this need be said. The deed from Dalton to Stanley conveyed no title to this tract. One essential call was apparently omitted. As it reads it is impossible to apply the description to the plan so as to make it include any of the land westerly of the bluff line. It may be noticed that in the mortgage given back by Stanley to Dalton on the same day the missing call is found. The mortgage with the missing call supplied included no land west of the bluff line. The deed of the Ottawa Park Company to Stanley purported to convey only such land as Dalton had given a deed of. As Stanley obtained no title the deed of Stanley to the plaintiff conveyed none.

But the deed of Dalton and the Ottawa Park Company to the plaintiff in 1914 was broad enough in description to cover the disputed tract. It purported to release and convey all the grantor's right, title and interest in all the land in Ottawa Park lying between the easterly side line of Glen avenue and low water, which had not been previously conveyed. Although this was a quitclaim deed, it seems to be conceded that either Dalton or the Ottawa Park Company then owned all of the Ottawa Park tract which had not previously been conveyed. The evidence leads us to conclude that this deed was given to cure the defect in the deed from Dalton to Stanley. That defect had been discovered. But the new deed was more comprehensive than the old one.

In the meantime, however, in 1911, the Ottawa Park Company had conveyed Sea View avenue, as delineated on the recorded plan, to the town of Cape Elizabeth, "as and for a public street." And the town in the same year accepted the dedication. This acceptance constituted Sea View avenue, a public town way, over which the town and its agents and representatives had the same authority as over other public ways. *Brown* v. *Bowdoinham,* 71 Maine, 144.

If the tract a b c d was a part of Sea View avenue as thus dedicated and accepted, the plaintiff had no right to build a fence across it, and the defendants were justified in taking it away. In such case, whatever title the plaintiff got in 1914 was subject to the public easement. If it was not a part of Sea View avenue, then so far as the rights of the town were concerned, it was the private property of the plaintiff, and he had a right to fence it off from

the avenue. In this case we have nothing to do with the rights of lot owners with respect to any incipient dedication of this tract for their benefit, created by platting the land, recording the plan, and selling lots in accordance with it. But the dedication is a circumstance showing that the tract was not intended for private use.

The tract itself is about eighty feet long and from forty to fifty feet wide. Upon the plan it is not numbered as a lot. Nor is any particular use for it designated. If it be not a part of the avenue, it has no name. It is an open space from the line of direct travel on the avenue to the brow of a high and precipitous bluff overlooking the beach and the ocean. It has been a thoroughfare for people who desired to go down to the beach. Though not yet graded and wrought for travel, its size and shape make it susceptible for use with carriages as well as on foot. At the time the land was platted, it was evidently intended that the tract should be reserved for the general benefit of the purchasers of lots in the Park, the same as the avenues were reserved. By platting and recording the plan, and by selling lots according to the plan, this tract was dedicated, as the avenues were dedicated. All these considerations, together with the declarations of the owner in the deeds of lot 7, constrain us to the conclusion that the disputed tract was intended to be dedicated as a part of Sea View avenue.

But this is not enough. The conveyances, both to the plaintiff and to the town were made with reference to the recorded plan. By the deed of dedication to the town in 1911, and the town's acceptance, the town took Sea View avenue as delineated on the recorded plan. It took no more. This deed, which was recorded, and the recorded plan were constructive notice to a subsequent purchaser of the extent of the dedication. The case does not show that the plaintiff had any other notice. He took title to the tract a b c d, subject, however, to the original incipient dedication, unless the recorded plan was notice to him that the tract was included in Sea View avenue. If it was notice, he took the title subject to the public easement created by the dedication to the town, and its acceptance. The plan itself must answer the question.

What should be the proper answer is by no means free from doubt. The plan was notice that the tract had been reserved from

private use.  The tract bore no distinguishing mark to indicate its dedicated use separate from the avenue.  It afforded a natural and easy access from the line of travel along the avenue to the brow of the bluff overlooking the sea.  In any event the avenue in that vicinity was of irregular shape.  Taking into account the whole situation, we think we shall interpret the plan more accurately by holding that it was notice to the plaintiff that the tract a b c d was dedicated as a part of Sea View avenue, which, as so dedicated, became in 1911, a public town way.  It follows that the defendants could justifiably remove a fence which obstructed it.

*Judgment for the defendants.*